UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAFECO INSURANCE COMPANY
OF AMERICA,

                            Plaintiff,

         v.

FIDELITY NATIONAL TITLE
INSURANCE COMPANY,

                            Defendant.

CASE NO. 3:19-CV-5902-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: November 20, 2020

The District Court referred this action to United States Magistrate Judge David W.

Christel. Dkt. 11. Currently before the Court is Plaintiff Safeco Insurance Company of America's

Motion for Summary Judgment and Defendant Fidelity National Title Insurance Company's

Response to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary

Judgment. Dkt. 28, 30.

         Safeco Insurance Company of America ("Safeco") asserts Fidelity National Title

Insurance Company ("Fidelity) had a duty to defend its insureds, Scott and Debra Dalgleish ("the

Dalgleishes"), in an underlying lawsuit related to a land dispute between neighbors. After

1  reviewing the relevant evidence, the Court finds Fidelity did not have a duty to defend the

2  Dalgleishes. Therefore, the Court finds no genuine issue of material fact remains in this case.

3  The Court recommends Safeco's Motion for Summary Judgment (Dkt. 28) be denied and

4  Fidelity's Cross-Motion for Summary Judgment (Dkt. 30) be granted.

5  **I.      Background**

6      Safeco filed this lawsuit seeking declaratory relief against Fidelity. Dkt. 1. Safeco alleges

7  Fidelity issued an insurance policy to the Dalgleishes for property located at 6495 NE Twin Spits

8  Road, Hansville, Washington 98340 ("Dalgleishes' property"). *Id.* at ¶ 3.1. A lawsuit arose

9  related to the Dalgleishes' property. The Dalgleishes tendered a claim to Fidelity; Fidelity denied

10  coverage and refused to defend the Dalgleishes. *Id.* at ¶ 3.15. Safeco agreed to provide a defense

11  in the underlying lawsuit under a reservation of rights. *Id.* at ¶ 3.17. Safeco requested

12  contribution of defense costs from Fidelity, but Fidelity refused to contribute. *Id.* at ¶ 3.20.

13      Safeco now seeks a judicial declaration that Fidelity had a duty to defend the Dalgleishes

14  in the underlying action. *Id.* at ¶¶ 4.1-4.4, Prayer for Relief #1. Safeco also seeks contribution

15  from Fidelity for the equitable share of defense costs paid by Safeco that should have been paid

16  by Fidelity. *Id.* at ¶¶ 5.1-5.3, Prayer for Relief #2.

17      Safeco filed the Motion for Summary Judgment on July 30, 2020. Dkt. 28; *see also* Dkt.

18  25-26 (supporting evidence). Fidelity filed its Cross-Motion for Summary Judgment on August

19  17, 2020. Dkt. 30-32. Safeco and Fidelity filed Replies on September 11, 2020. Dkt. 36, 37. The

20  Court held oral argument on October 8, 2020. *See* Dkt. 39.[1]

21

22

23

_____

24  [1] During the hearing, the Court heard argument from Attorney Lisa Neal, on behalf of Safeco, and Attorney Daniel Womac, on behalf of Fidelity.

## II.      Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III.      Discussion

Safeco asserts Fidelity had a duty to defend the Dalgleishes in the underlying lawsuit and was on notice of that duty to defend (1) when the Dalgleishes initially tendered the claim and (2) through discovery responses made in the underlying lawsuit. Dkt. 1, 28.

### A.      Legal Standard

"Title insurance is an agreement to indemnify against loss arising from a defect in title to real property, usually issued to the buyer of the property by the title company that conducted the title search." *Rabinowitz v. Chicago Title Ins. Co.*, 2020 WL 4783745, at *3 (Wash. Ct. App. Aug. 18, 2020) (internal alterations and quotations omitted). The duty to defend "arises at the

time an action is first brought, and is based on the potential for liability." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53 (2007). An insurer has a duty to defend "'when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" *Id.* at 53 (quoting *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425 (1999)).

"The duty to defend generally is determined from the 'eight corners' of the insurance contract and the underlying complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wash.2d 793, 803 (2014). There are two exceptions to this rule. *Id.*

> First, if coverage is not clear from the face of the complaint but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt on the duty to defend. Second, if the allegations in the complaint conflict with facts known to the insurer or if the allegations are ambiguous, facts outside the complaint may be considered. However, these extrinsic facts may only be used to trigger the duty to defend; the insurer may not rely on such facts to deny its defense duty.

*Id.* at 803-04 (internal citations omitted). An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is "clearly not covered by the policy." *Woo*, 161 Wn.2d at 53.

B.  Background Evidence

The evidence shows a 20-acre parcel of land was split into four 5-acre parcels. Dkt. 31-1, pp. 69-70. The 20-acre parcel belonged to Matilda Erickson; three of the four parcels were sold and the remaining parcel was eventually inherited by Kenneth and Brenda Erickson ("the Ericksons"). *See* Dkt. 31-1, Ex. E. The Dalgleishes own the northwest parcel, the Ericksons own the northeast parcel, Gregg and Monica Nelson ("the Nelsons") own the southwest parcel, and Steven and Cynthia Jensen ("the Jensens") own the southeast parcel. *See id.* at pp. 71, 77, 79, 83. A private road runs north to south along the east-west boundaries of the properties – between the Dalgleishes' and the Ericksons' properties and between the Nelsons' and the Jensens' properties ("Private Road"). *See id.* at pp. 86-89.

On October 15, 2004, when the Dalgleishes recorded the purchase of their property, they obtained title insurance from Fidelity.[2] Dkt. 31-1, pp. 23-53, 77. The policy provides:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, [Fidelity] . . . insures, as of Date of Policy shown in Schedule A, against loss or damage . . . sustained or incurred by the insured by reason of: 1. Title to the estate or interest described in Schedule A being vested other than as stated therein; 2. Any defect in or lien or encumbrance on the title; 3. Unmarketability of the title; 4. Lack of a right of access to and from the land.

*Id*. at p. 30. The policy also stated Fidelity would pay the costs, attorneys' fees, and expenses incurred in defense of the title, to the extent provided in the conditions and stipulations. *Id*.

The policy described the covered property as:

> The northwest quarter of the west one-half of the northwest quarter of the southwest quarter, Section 16, Township 28 north, Range 2 east, W.M.;
>
> Except the north 30 feet for Twin Spits Road, and less private road along the east margin of above described property that provides ingress, egress, and a right of way for utilities for other tracts in the west one-half of the northwest quarter of the southwest quarter of Section 16, Township 28 north, Range 2 west, W.M., records of Kitsap County, Washington;
>
> Situate in the County of Kitsap, State of Washington.

*Id*. at p. 24.

A dispute arose between the Nelsons, the Jensens, and the Ericksons over the Private Road and, on April 19, 2016, the Nelsons and the Jensens filed a complaint to quiet title, declaratory relief, and injunctive relief against the Ericksons in state court. *Id*. at pp. 2-21. The Dalgleishes were not named as plaintiffs or defendants in the complaint. *See id*. On May 27, 2016, the Ericksons filed "Defendants' Amended Answer, Counterclaims and Third-Party

---

[2] The insurance policy was originally issued by Transnation Title Insurance Company; however, there is no dispute Fidelity is the proper party in this dispute. *See* Dkt. 1; Dkt. 31-1, p. 23.

1  Complaint" ("TPC"), wherein they named the Dalgleishes as third-party defendants in the

2  underlying action. Dkt. 1-3.

3       A detailed recitation of the relevant evidence will be further discussed below as it

4  pertains to each claim and argument.

5       C.  Initial Tender

6       Safeco first asserts the TPC raises the duty to defend and thus Safeco is entitled to

7  summary judgment. Dkt. 28. Fidelity contends the claims alleged in the TPC are not covered

8  under the policy and therefore Fidelity has no duty to defend. Dkt. 30.

9       1.  *Evidence Related to Initial Tender*

10       The evidence shows the complaint in the underlying action was filed on April 19, 2016.

11  Dkt. 31-1, p. 2. The Dalgleishes were not named as a party in the complaint. *Id*. The plaintiffs,

12  the Jensens and the Nelsons, sought quiet title to the Private Road. *Id*. at pp. 3-4.

13       The Dalgleishes contacted Fidelity in April of 2016 regarding a policy claim. *See* Dkt.

14  26-1, pp. 10-16. On May 17, 2016, Emmanuel Alvarez, Claims Counsel for Fidelity, emailed Mr.

15  Dalgleish. *Id*. at p. 14. In the email, Mr. Alvarez stated that Mr. Dalgleish was claiming the

16  Ericksons were "hostilely taking over" the Dalgleishes' property, requested further information,

17  and instructed Mr. Dalgleish to keep Fidelity updated regarding any arguments or documents

18  delivered to the Dalgleishes related to the claim. *Id*. Mr. Dalgleish informed Fidelity that the

19  Ericksons were claiming they owned part of the Dalgleishes' property. *Id*. at p. 15. He also

20  informed Fidelity that the Dalgleishes had not been named as a party in any litigation, but

21  believed the Ericksons named the Dalgleishes in their answer to the underlying complaint. *Id*.

22  Mr. Dalgleish appears to have provided Fidelity with a copy of the underlying complaint and the

23  Ericksons' "Answers" on May 18, 2016, though the documents allegedly provided to Fidelity

24

have not been submitted to this Court. *Id.* On June 2, 2016, Mr. Dalgleish emailed Mr. Alvarez, informing Fidelity that the Dalgleishes had been served with the TPC on June 1, 2016. Dkt. 16-1, p. 16.

In the TPC, the Ericksons named the Dalgleishes as third-party defendants and raised the following five claims:

1. The plaintiffs and third-party defendants knowingly trespassed on the Ericksons' property by using the Private Road causing an intentional trespass;
2. The plaintiffs improvidently obtained a preliminary injunction causing the Ericksons the loss of the use of the Private Road;
3. The plaintiffs and third-party defendants took actions on their land that caused surface and stormwater to emanate from their properties in an unnatural artificial way causing damage to the Ericksons' property;
4. The plaintiffs and third-party defendants damaged vegetation located on the Ericksons' property constituting a statutory trespass; and
5. Declaratory judgment and/or decree of quiet title to the Private Road.

Dkt. 1-3.

On June 9, 2016, Fidelity denied coverage of the claim. Dkt. 25-1, pp. 2-6. In the letter denying coverage, Fidelity explained that it reviewed the complaint and the TPC in the underlying action. *Id.* Fidelity determined the Private Road at issue in the underlying action was excluded from the legal description of the property covered by the Dalgleishes' policy. *Id.* at p. 4. Fidelity also found exclusions and exceptions from coverage applied. *Id.* at pp. 4-5. Specifically, Fidelity concluded the policy excluded coverage from defects, liens, encumbrances, adverse claims or other matters created, suffered, assumed or agreed to by the insured claimant or attaching or created subsequent to Date of Policy. *Id.* at p. 4. Fidelity identified two exceptions that applied to the Dalgleishes' claim: the policy does not insure against loss or damage arising by reason of (1) any facts, rights, interests or claims which are not shown by public records but could be ascertained by an inspection of the land or (2) discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey of the land

1 would disclose and which are not shown by the public records. *Id.* at p. 4. Fidelity also denied

2 the Dalgleishes' claim based on coverage being excepted pursuant to two special exceptions

3 related to two recorded easements. *Id.* at p. 5.

4    2.  *Analysis Related to Initial Tender*

5    Safeco contends Fidelity had a duty to defend because (1) the Dalgleishes' email

6 informed Fidelity that the Ericksons sought to "take over" the Dalgleishes' property and (2) the

7 TPC claimed the Dalgleishes trespassed on the land to the west of the Private Road. Dkt. 28, 37.

8      i.   Initial Email

9    Safeco asserts the Dalgleishes' email to Fidelity imposed a duty to defend. Dkt. 28, 37.

10 The email sent by Mr. Dalgleish to Fidelity informed Fidelity that Mr. Dalgleish believed the

11 Ericksons "decided" that "they own part of [the Dalgleishes'] property." Dkt. 26-1, p. 15. "Most

12 Washington cases recite that the insurer's duty to defend is triggered when a complaint is filed

13 against the insured." *United Services Auto. Ass'n v. Speed*, 179 Wash. App. 184, 195 (2014).

14 This is because most policies require the insurer to defend only in a "suit" against an insured. *Id.*

15 Here, the Fidelity policy stated that the Dalgleishes were required to notify Fidelity of any

16 litigation or any claim of title or interest that might cause loss or damage for which Fidelity may

17 be liable. Dkt. 31-1, p. 31 (¶ 3 of policy). Thus, Fidelity's duty to defend would be triggered by

18 any claim of title or interest. *See Speed*, 179 Wash. App. at 195 (finding the language of the

19 policy triggered a duty to defend when the injured asserted a claim).

20    At the time Mr. Dalgleish initiated the claim with Fidelity there was no claim of title or

21 interest against his property. The underlying complaint did not name the Dalgleishes as a party to

22 the action against the Ericksons for quiet title and the parties do not assert the underlying

23 complaint raised an issue concerning a duty to defend. The TPC had not been filed or served on

24

1   the Dalgleishes. Further, there is no evidence any informal or formal claim had been asserted by

2   the Ericksons' against the Dalgleishes prior to May 27, 2016. *See* Dkt. 1-3. For example, there is

3   no evidence the Ericksons sent a demand letter to the Dalgleishes. Therefore, Mr. Dalgleish's

4   email did not create a duty to defend under the policy at issue in this case. *See Speed*, 179 Wash.

5   App. at 195 (finding duty to defend triggered when the injured asserted a claim in a demand

6   letter against the insured); *Robbins v. Mason County Title Insurance Co.*, 195 Wash.2d 618

7   (2020) (finding policy language created duty to defend when the injured sent a letter to the

8   insured).

9                    ii.        Third-Party Complaint

10          Safeco asserts the TPC created, or at the least was ambiguous regarding, a duty to defend.

11  Dkt. 28, 37. Safeco contends that the allegations in the TPC related to the Dalgleishes trespassing

12  on the Ericksons' property by filling in a ditch, removing trees, and removing stakes fall outside

13  the Private Road and impose a duty to defend. Dkt. 28, pp. 5-6; Dkt. 37, p. 2.

14          A claim of trespass only implicates a title issue if it somehow alters the interest in the

15  land. *See Cherry Hills Farm Court, LLC v. First Am. Title Ins. Co.*, 428 F.Supp.3d 516, 521 (D.

16  Colo. 2019); *see also Mielke v. Yellowstone Pipeline Co.*, 73 Wash. App. 621, 624 (1994)

17  (holding trespass "includes the misuse, overburdening or deviation from an existing easement").

18  The allegations related to the filling of a drainage ditch and removing trees do not alter the

19  interest in the Dalgleishes' property. Regarding the drainage ditch, the Ericksons alleged the

20  Dalgleishes "closed a drainage ditch" which caused surface and stormwater to emanate from the

21  Dalgleishes' property in an unnatural and artificial way. Dkt. 1-3, ¶ 7.4 The Ericksons asserted

22  this caused water damage to the Ericksons' property. There are no allegations the drainage ditch

23  is on Ericksons' property or that the Ericksons' claim relates to the title of the drainage ditch.

24

REPORT AND RECOMMENDATION - 9

1    Thus, the TPC trespass claim related to the water damage from the Dalgleishes closing a

2    drainage ditch does not alter the interest in the Dalgleishes' property.

3         In the TPC, the Ericksons also alleged the Dalgleishes intentionally trespassed on the

4    Ericksons' "property by removing trees, using the Private Road for ingress and egress and

5    ostensibly maintaining the road." Dkt. 1-3, ¶ 7.29. The TPC states the Dalgleishes caused

6    damage to the Erickson's property by "cutting, pruning or otherwise damaging trees, shrubs and

7    vegetation located on the Ericksons' property." *Id*. at ¶ 7.44. The Ericksons do not allege

8    ownership to the Dalgleishes' property or that there was a dispute regarding who owned the

9    property on which the vegetation was removed. Thus, there is no indication the trespass claims

10   related to the property damage raised a title issue.

11        Safeco also asserts allegations in the TPC related to the Dalgleishes removing stakes

12   imposed a duty to defend. Dkt. 28, pp. 5-6; Dkt. 32, p. 2. The TPC states that, in 2015, the

13   Ericksons conducted a survey and placed new north and south corner markers three to four feet

14   west of the misplaced markers. Dkt. 1-3, ¶ 7.10. The new survey allegedly brought the

15   boundaries in line with the original 1974 survey. *Id*. The Ericksons allege Mr. Dalgleish pulled

16   the Ericksons' survey stakes, which were "along the west side of the Private Road," in 2016. *Id*.

17   ¶7.21. The Ericksons' assert the Dalgleishes trespassed on the Ericksons' property when they

18   removed the stakes. *Id*. at ¶ 7.30.

19        The allegations related to the Dalgleishes filling a drainage ditch and removing trees do

20   not implicate title issues and thus the Dalgleishes' title policy does not cover these claims.

21   Therefore, Fidelity had no duty to defend these claims. However, the Ericksons conducted a

22   survey and placed markers three to four feet to the west of misplaced markers, which could be on

23   the Dalgleishes property. The Ericksons' claim that the Dalgleishes trespassed when they

24

1    removed the stakes implies the Ericksons' believed they owned a portion of property that was

2    potentially owned by the Dalgleishes. Thus, the allegations related to the Dalgleishes removing

3    stakes from the Ericksons' property may implicate a title issue.

4          As a title issue may be implicated from the trespass claims, the Court will next determine

5    if the policy excludes or excepts coverage for the trespass claims where the underlying claim (1)

6    would not have resulted in a loss or damage to the Dalgleishes' interest in their land, (2) was

7    related to the Private Road, which was not covered by the policy, (3) was based on a survey

8    conducted after the policy date, and (4) was based on a boundary dispute that could have been

9    discovered by the Dalgleishes at the time the policy was issued.

10          First, the Dalgleishes' policy explicitly excludes from coverage any "[d]efects, liens,

11    encumbrances, adverse claims or other matters: . . . resulting in no loss or damage to the insured

12    claimant." Dkt. 31-1, p. 50 (¶3(c)). Here, the trespass claims could not result in a loss or damage

13    to the insured. If the Dalgleishes were found to have trespassed on the Ericksons' property when

14    they filled a drainage ditch, removed trees, or removed stakes, the Dalgleishes would not have

15    suffered a loss or damage to their land because they never owned the property. The same is true

16    if the Dalgleishes were found to have not trespassed; they continued to maintain ownership in the

17    property wherein they filled the ditch, removed trees, or removed stakes. Thus, there would be

18    no resulting loss or damage to their property interest. Restated, if the trespass claims were proven

19    true because the Dalgleishes never had an interest in the property, they would retain the same

20    interest in the property. Therefore, the trespass claims are not conceivably covered by the policy

21    and Fidelity did not have a duty to defend. *See Rabinowitz*, 2020 WL 4783745 at *5 (noting the

22    only way an insured could suffer a loss is if the interest they had to begin with was greater than

23    the interest they would retain if the underlying claim was proven true).

24

1          Second, the Private Road at issue under the TPC is specifically excluded from the legal

2  description of the Property described in Schedule A of the policy. Dkt. 31-1, pp. 23-53. The

3  policy states the land covered by the policy does not include a private road along the east margin

4  of the Dalgleishes' property that provides ingress, egress, and a right of way for utilities. *Id*. at p.

5  24. The TPC appears to define the Private Road as "an approximately seven-and-a-half-foot wide

6  Private Road (with trees and - at one time – a ditch which r[a]n on the west side of the road)[.]"

7  *Id*. at ¶ 7.8. The plain language of the TPC indicates the Private Road includes both trees and a

8  ditch. Consistent with this interpretation, the TPC references a ditch that runs "along" the Private

9  Road. *See id*. at ¶¶ 3.31, 7.12.[3] The Ericksons also allege Mr. Dalgleish removed survey markers

10  "along the west side of the Private Road."

11          The allegations in the TPC indicate the ditch, trees, and survey markers were located on

12  or along the Private Road and were therefore excluded from coverage. This reading of the TPC is

13  further confirmed by the Ericksons' claim for quiet title of the Private Road. *Id*. at ¶ 7.47.

14  Moreover, the state court found that there was only one road at issue: the Private Road and the

15  state court matter did not involve claims of either prescriptive easements or adverse possession.

16  Dkt. 31-1, pp. 70-71. Taking the TPC as a whole, the Ericksons' claims relate only to the Private

17  Road. As the Private Road was not covered under the policy, the claims alleged in the TPC are

18  not covered under the policy and Fidelity had no duty to defend.

19          Third, the policy explicitly excludes from coverage any "[d]efects, liens, encumbrances,

20  adverse claims or other matters: . . . attaching or created subsequent to Date of Policy." Dkt. 31-

21

---

22       [3] The Ericksons did state, in answering the complaint, that they sent a letter to the Jensens offering "a

23  neighborly accommodation to allow installation of utilities outside of the Private Road within a two-foot-wide
ditch." *Id*. at ¶ 3.28. There is no indication this is an existing ditch or the ditch the Dalgleishes allegedly filled. In

24  fact, the ditch referenced "outside of the Private Road" relates only to a dispute between the Jensens and the
Ericksons.

1    1, p. 50 (¶3(d)). Here, in 2015, the Ericksons resurveyed and re-marked the property boundary

2    lines based on the new survey. Dkt. 1-3, ¶ 7.10. The Ericksons alleged this re-marking brought

3    property boundaries in line with the original survey establishing the property boundaries. *Id.* As

4    the re-marking was based on the 2015 survey, any defects, liens, encumbrances, or adverse

5    claims attached after the date of the policy – October 15, 2004. Therefore, this policy exclusion

6    bars coverage of the trespass claim related to Mr. Dalgleish's removal of survey stakes. *See Herr*

7    *v. Forghani*, 161 Wash. App. 1037 (2011) (finding no coverage for any loss or damage where the

8    claimed change of use to an easement occurred more than two years after the policy's effective

9    date); *Campbell v. Ticor Title Ins. Co.*, 166 Wn.2d 466, 472-75 (2009) (finding no coverage

10   under title policy for easement dispute that arose after the date of the policy).

11         Fourth, under the policy, the Dalgleishes are not insured against loss or damage arising

12   by reason of "[d]iscrepancies, conflicts in boundary lines, shortage in area, encroachments, or

13   any other facts which a correct survey of the land would disclose, and which are not shown by

14   the public records." Dkt. 31-1, p. 24 (No. 4). Here, any title dispute related to Mr. Dalgleish's

15   removal of the survey stakes is a conflict in boundary lines. The Ericksons assert they resurveyed

16   and re-marked the property lines to bring the property boundaries in line with the original 1974

17   survey that split the parcels. Dkt. 1-3, ¶ 7.10. This conflict in the boundary line could have been

18   discovered by the Dalgleishes at the time they obtained ownership of their property if they had

19   conducted a survey. Thus, even if the allegations surrounding the removal of the stakes created a

20   title issue, the policy excepted this discrepancy/boundary conflict and the claim is not be covered

21   under the policy. Therefore, the Ericksons' claim that the Dalgleishes trespassed when they

22   removed stakes from the Ericksons' property did not impose a duty to defend under the title

23   insurance policy. *See Haley v. Hume*, 10 Wash.App.2d 484, 499-503 (2019) (finding no duty to

24

1  defend where the exception regarding the disclosure of a matter through an accurate survey

2  applied to the condition and possession of an easement); *Bernhard v. Reischman*, 33 Wash. App.

3  569, 579, 658 P.2d 2, 8 (1983) (finding the clear language of the "accurate survey" exception

4  resulted in no coverage for a boundary dispute).

5         In summation, the Court finds the TPC did not raise claims covered under the

6  Dalgleishes' title policy. The claims for trespass related to the Dalgleishes filling in a ditch and

7  removing trees did not implicate a title claim. Even if these claims did implicate a title claim, the

8  claims were not covered under the policy because success of the underlying claim would not

9  have resulted in a loss or damage to the Dalgleishes' interest in the land or the claims were

10  related to the Private Road, which was not land covered under the policy. Moreover, any title

11  claim implicated by the claim for trespass related to Mr. Dalgleish removing survey stakes along

12  the Private Road also fails. This claim was not covered under the policy because success of the

13  underlying claim would not have resulted in a loss or damage to the Dalgleishes' interest in their

14  land, was related to the Private Road, which was not covered by the policy, was based on a

15  survey conducted after the policy date, or was based on a boundary dispute that could have been

16  discovered by the Dalgleishes at the time the policy was issued. For these reasons, the Court

17  finds the TPC does not implicate coverage under the Fidelity title policy and, therefore, Fidelity

18  did not have a duty to defend based on the TPC.

19         3.  *Conclusion*

20         The initial email from the Dalgleishes did not trigger Fidelity's duty to defend under the

21  policy. Further, a plain reading of the eight corners of the TPC and the Dalgleishes' policy does

22  not create a property dispute so as to impose a duty to defend on Fidelity. Liberally construed,

23  the TPC does not allege facts, which if proven, could impose liability upon the Dalgleishes

24

1    within the title policy's coverage. As it is clear from the face of the TPC that Fidelity did not owe

2    a duty to defend the Dalgleishes, there was no need for Fidelity to further investigate the claims

3    alleged beyond the eight corners of the TPC and the policy. For these reasons, the Court finds the

4    initial tender by the Dalgleishes did not impose a duty to defend on Fidelity.

5         D.  Tender through Discovery Responses (Supplemental Tender)

6         Safeco asserts that, even if the TPC did not, on its face, impose a duty to defend, the

7    Ericksons' allegations in their discovery response clarified their TPC claims, which imposed a

8    duty to defend on Fidelity. Dkt. 28, 37.[4]

9         1.  *Evidence Related to Discovery Responses*

10        The evidence shows the Ericksons submitted responses to interrogatories on November

11   28, 2016. Dkt. 25-1, pp. 13-18. In Interrogatory No. 9, the Ericksons were asked to "identify all

12   facts that support [their] contention that [the Nelsons and the Jensens] have no legal or equitable

13   right to use the Easement Road described in the Complaint." *Id*. at p. 14. The Ericksons

14   responded it was their position that two private roads had been established related to the subject

15   parcels. *Id*. at p. 15. A private dirt road was installed to provide the Erickson family with access

16   to a 20-acre parcel owned by Wesley Erickson directly south of the subject parcels, Buck Lake,

17   and Buck Lake Road extension. *Id*. This road began at the northeast corner of the Dalgleishes'

18   property, "ran on the Erickson parcel, along its western boundary and continued generally south

19   along the western boundary of the of the Jensen property." *Id*. The Ericksons stated they

20   "provided neighborly accommodations to the Dalgleishes to use the dirt/gravel road to access

21

22   _____

23        [4] The Court notes the parties submitted an October 2017 letter from the Dalgleishes' counsel in the underlying lawsuit to Fidelity and the Findings of Fact and Conclusions of Law from underlying lawsuit. Dkt. 25-1, pp. 8-11; Dkt. 31-1, pp. 67-126. The parties do not assert these two documents impose a duty to defend on Fidelity. *See* Dkt. 1, 28, 30, 37. Therefore, the Court declines to consider whether any information including in these

24   documents created a duty to defend in this case.

1    southern portions of their property as it had become overgrown[.]" *Id*. The Ericksons' rescinded

2    their permissive use and installed a locked gate. *Id*. The Ericksons continue to assert the use of

3    the dirt/gravel road has been at the Ericksons' sole discretion. *Id*. at p. 16.

4         The Ericksons also state a "private road" identified in the 1975 deed for sale of the

5    Dalgleishes' property is a separate easement road, but no dirt, gravel or other roadway was ever

6    physically installed. *Id*. This easement road was located along the eastern boundary of the

7    Dalgleishes' and Nelsons' property and the western boundary of the Jensens' property. *Id*. The

8    purpose of this road was to provide ingress, egress, and right of way for utilities from Twin Spits

9    Road. *Id*. The Dalgleishes' property is encumbered by the easement road, but the Dalgleishes

10   had no right to use it for ingress, egress, or utilities. *Id*. Ownership of the easement road

11   remained with the Erickson family and passed to the Ericksons in 2002. *Id*.

12        The discovery responses were tendered to Fidelity on October 26, 2017, when counsel for

13   the Dalgleishes in the underlying lawsuit sent a letter to Fidelity requesting Fidelity to reconsider

14   its position regarding defense of the Dalgleishes. Dkt. 25-1, pp. 8-11. The letter requested

15   Fidelity accept tender of defense and reimburse all fees and costs incurred and pay for defending

16   the anticipated appeal of the state court decision by the Ericksons. *Id*. On December 5, 2017,

17   Fidelity sent a letter to the Dalgleishes' counsel stating Fidelity affirmed its previous denial. *Id*.

18   at pp. 22-24. The parties do not assert any additional information contained in the October 26,

19   2017 letter implicates a duty to defend in this case; therefore, the Court will not discuss the

20   content of the letter unrelated to the interrogatories.

21        2.  *Analysis Related to Discovery Responses*

22        It is Safeco's position that a duty to defend can arise at any point in time and is

23   retroactive to the initial tender. Thus, Safeco contends that, even if the initial tender did not

24

1  trigger a duty to defend, Fidelity's duty to defend was triggered at the supplemental tender and

2  related back to the date of the initial tender.

3         The parties do not cite to any case law that is directly analogous to the facts of this case.

4  In *Broughton Law Grp., Inc., P.S. v. Fire Ins. Exch.*, 190 Wash. App. 1042 (2015), the

5  Washington State Court of Appeals, applying California law to a California matter, stated:

6         The duty to defend is generally determined from all of the information available to
       the insurer at the time of tender. But, later developments may impact the insurer's
7      duty to defend. If an insured retenders new information, the insurer has a duty to
       analyze whether the information potentially triggers coverage under the policy. The
8      insured must bring to the insurer's attention new facts indicating a potential for
       coverage.

9
   *Id.* (internal quotations and footnotes omitted).
10
11         Here, the initial tender did not impose a duty to defend on Fidelity. The Dalgleishes,

12  through counsel, provided Fidelity with additional information regarding the claim in October

13  2017, after the state court had entered its findings of fact and conclusions of law. The Court must

14  now determine if the supplemental tender imposed a duty to defend on Fidelity and, if so,

15  whether the Dalgleishes breached their duty under the policy by not notifying Fidelity of the

16  information contained in the discovery responses.[5]

17         The answer to the Interrogatory No. 9 fails to show Fidelity has a duty to defend.

18  Interrogatory No. 9 discusses the Ericksons' understanding of the property and the Nelsons' and

19  Jensens' lack of ownership to the land in question. Interrogatory No. 9 states that a road ran on

20  the Ericksons' property. The Ericksons also believed a second road/easement ran along the

21  _____

22         [5] The Ericksons responded to the Jenson's and the Nelson's discovery requests on November 28, 2016.
   Dkt. 25-1, pp. 13-18. These discovery responses were not tendered to Fidelity until October 26, 2017. *See id.* at pp.
23  8-11. The Dalgleishes did not provide the additional information to Fidelity until nearly a year after the Dalgleishes
   received the discovery responses and after the state court trial had concluded and the state court had issued Findings
   of Fact and Conclusions of Law. Fidelity informed the Dalgleishes that they failed to meet Condition 4(a) of the
24  policy when they did not tender the interrogatory responses to Fidelity. Dkt. 31-1, p. 129.

1    Dalgleishes' property. Both roads were on the Ericksons' property. There is nothing to establish

2    either road described in the interrogatory responses was on the Dalgleishes' property, that the

3    Dalgleishes had any title or property claim to either road, or that the Ericksons were trying to

4    "take" land owned by the Dalgleishes.

5           The second road or easement described by the Ericksons appears to run to the west of the

6    private road described by the Ericksons in Interrogatory No. 9. This second road/easement is

7    described as located along the eastern boundary of the Dalgleishes' and the Nelsons' properties

8    and the western boundary of the Jensens' property and to the west of the Private Road. The

9    purpose of this road was to provide ingress, egress, and right of way for utilities. Schedule A of

10   the title policy states the "private road along the east margin of [the Dalgleishes' property] that

11   provides ingress, egress, and a right of way for utilities for other tracts" is not part of the interest

12   covered by the policy. Dkt. 31-1, p. 35. Since the second road described by the Ericksons in the

13   interrogatories also limits its purpose to providing ingress, egress and right of way for utilities,

14   there is no basis on which the second road could be covered under the Dalgleishes' policy.

15          Moreover, Fidelity received a copy of the state court Findings of Fact and Conclusions of

16   Law when it received the Ericksons' response to Interrogatory No. 9. *See* Dkt. 25-1, p. 11. In the

17   Findings of Fact and Conclusions of Law, the state court found that there was only one road at

18   issue: the Private Road. Dkt. 31-1, pp. 70-71. The state court rejected the Ericksons' argument

19   that an easement for a private road in the deeds of sale was separate from *the* Private Road. Thus,

20   when reviewing the response to Interrogatory No. 9, Fidelity was also able to review the

21   Findings of Fact and Conclusions of Law that found only one road existed and the state court

22   case involved the Private Road, not a second easement running alongside the Private Road. *Id.*

23

24

1    The response to Interrogatory No. 9 does not implicate a title issue since the road(s)

2    referenced were on the Erickson property and not covered under the policy. Further, if the

3    response to Interrogatory No. 9 did implicate a title issue or land dispute, the record is clear that

4    there was no second easement and the state court case only involved the Private Road, which

5    was not covered by the policy. Therefore, coverage under the policy was not conceivable based

6    on the Ericksons' response to Interrogatory No. 9 and Fidelity did not have a duty to defend.

7        Safeco argues Fidelity admitted coverage in December 2017, after receiving the

8    supplemental tender; thus, they had a duty to defend. Dkt. 28, p. 12. On December 5, 2017,

9    Fidelity sent a letter to the Dalgleishes' counsel again denying coverage and stating that Fidelity

10   was unable to evaluate any duty to defend an appeal because the issues on appeal were not made

11   known to Fidelity. Dkt. 31-1, pp. 128-30. In the three-page letter, Fidelity stated that the

12   interrogatories "created a potential for coverage under the Policy[.]" *Id*. at p. 129. But, in the

13   same letter, Fidelity denied coverage because the Dalgleishes did not comply with Condition 4(a)

14   of the policy when they failed to provide Fidelity with a written copy of the interrogatories in

15   November of 2016. *Id.*

16       A determination regarding the duty to defend is a matter of law. *Speed*, 179 Wash. App.

17   at 201. "What the insurer believes about the duty to defend or policy coverage is immaterial to

18   the court's duty to defend determination." *Id*. at 201–02. As discussed above, the Court finds

19   Interrogatory No. 9 did not impose a duty to defend. Therefore, the Court is not persuaded that

20   Fidelity's December 5, 2017 letter shows Fidelity had a duty to defend.

21       For the above stated reasons, the Court finds the Ericksons' discovery response did not

22   clarify claims in the TPC making it conceivable the claims were covered under the Dalgleishes'

23

24

1    policy with Fidelity. Therefore, the discovery responses did not impose a duty to defend on

2    Fidelity.

3          As the Court finds the Ericksons' response to Interrogatory No. 9 did not trigger

4    Fidelity's duty to defend, the Court need not consider the parties' arguments regarding whether

5    Fidelity could deny coverage due to the Dalgleishes' alleged failure to cooperate by providing

6    written notice of Interrogatory No. 9.

7    **IV.    Conclusion**

8          The Court finds neither the TPC nor the Ericksons' discovery responses conceivably

9    impose liability upon Fidelity within the Dalgleishes' policy coverage. As such, Fidelity did not

10   have a duty to defend the TPC. Therefore, the Court finds no genuine issue of material fact

11   remains in this case. The Court recommends Safeco's Motion for Summary Judgment (Dkt. 28)

12   be denied and Fidelity's Cross-Motion for Summary Judgment (Dkt. 30) be granted.

13         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

14   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

15   6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

16   review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

17   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

18   November 20, 2020, as noted in the caption.

19         Dated this 2nd day of November, 2020.

20

21   _____

22   David W. Christel
     United States Magistrate Judge

23

24